## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CLAXTON H. WILLIAMS, JR.,[1] | ) | |
| # N-62439, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 12-cv-989-MJR** |
| | ) | |
| SGT JERRY WITHOFT, SGT HEIMAN, | ) | |
| ANTHONY LOCKHEAD, | ) | |
| GUARD HOOD, MAJOR DURHAM, | ) | |
| MAJOR WESTERMAN, | ) | |
| REBECCA COWANS, | ) | |
| DAVID REDNOUR, JACKIE MILLER, | ) | |
| TERRI ANDERSON, MAGID FAHEEM, | ) | |
| R. POLLION, NIKKI MALLEY, and | ) | |
| J. SHEPHERD,[2] | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He claims that on March 22, 2011, he was assaulted by several guards and then denied medical attention for his injuries, in retaliation for a lawsuit he filed against one of them in this Court. Plaintiff also asserts that he was denied medical treatment following a stroke he suffered in March 2012.

Specifically, on March 22, 2011, Plaintiff was attempting to hand his dirty jumpsuit to Defendant Lockhead through the food slot in the door of his cell, when Defendant Withoft grabbed Plaintiff's right hand (Doc. 1, p. 13). Defendant Hood joined Defendant

---

[1]  Plaintiff's first name was mistakenly listed as "Clayton" on the docket sheet. The Clerk shall be directed to correct the error.

[2]  Plaintiff listed J. Shepherd as a Defendant, but this individual was inadvertently omitted from the docket sheet. The Clerk shall be directed to add this party.

Withoft in pulling on Plaintiff's arm until it became numb.  Defendant Withoft told Plaintiff, "You won't be filing any more lawsuits with this hand" (Doc. 1, p. 14).  Plaintiff took this as a reference to his jury trial that had just resulted in a verdict for Defendants on March 16, 2011 (S.D. Ill. Case No. 06-cv-772-MJR-SCW).  Defendant Withoft was among the parties sued by Plaintiff in that action (Doc. 1, pp. 14, 18).  Plaintiff tried to use his left hand to break free, whereupon Defendant Lockhead grabbed that hand, and Defendant Heiman put handcuffs on both Plaintiff's wrists.  Defendant Heiman then pulled on the cuffs with such force that he sat down on the floor, yanking Plaintiff's left shoulder and head against the inside of the steel cell door.  Plaintiff was in unbearable pain, and something "popped" in his left shoulder and neck. Defendant Heiman removed the cuff from Plaintiff's right hand and attached it to the bars. Defendant Lockhead then slammed the food slot door against Plaintiff's left hand while Defendants Hood and Withoft twisted his right hand and banged it against the food slot.  While they were assaulting Plaintiff, Defendants Withoft and Heiman yelled "you're in prison for a sex crime" (Doc. 1, pp. 19-20).  This was untrue, and Plaintiff viewed this public statement as an attempt to induce other inmates to harm him.   During this entire episode, Defendants Durham and Westerman looked on without intervening to stop the assault.   The Defendants later conspired to file a false disciplinary report over the incident (Doc. 1, p. 17), and Plaintiff was punished with three months of C-grade and commissary restriction as a result (Doc. 1-1, p. 9).

        When the attack ceased, Plaintiff told Defendant Durham that he needed a doctor, to which Defendant Durham responded with an expletive (Doc. 1, p. 14).  Plaintiff did receive x-rays and pain medication over one month later (Doc. 1, p. 20), but indicates he was not taken to the doctor in the time immediately following the incident (Doc. 1, pp. 14, 23).  Plaintiff was scheduled to be transferred to Stateville Correctional Center ("Stateville") on the day after the

attack (Doc 1, p. 13).  Plaintiff's exhibit at Doc. 1-1, p. 12, indicates that this transfer was temporary, as Plaintiff was returned to Menard on March 30, 2011.  Plaintiff had x-rays at Menard in April and May 2011, and he complains that Defendant Faheem (the Menard doctor) failed to send him to an outside neurologist in June 2011 (Doc. 1, p. 20).

Plaintiff faults Defendants Cowans (grievance officer), Rednour (warden), and Miller (Administrative Review Board) for "enhancing" the conspiracy to cover up the attack, because they failed to respond to his grievances over the incident (Doc. 1, p. 17).

In addition to participating in the attack on Plaintiff, Defendant Withoft retaliated against Plaintiff by assigning him to cells with mentally ill inmates who provoked fights with Plaintiff.  Further, Defendants Withoft and Heiman repeatedly assigned Defendant Lockhead to escort Plaintiff on his medical passes, during which Defendant Lockhead inflicted pain on Plaintiff by excessively tightening the handcuffs behind Plaintiff's back (Doc. 1, p. 18-19).

Plaintiff's complaint also includes a section purporting to show that he is in imminent physical danger pursuant to 28 U.S.C. § 1915(g).[3]  Here, he raises entirely unrelated claims that he was denied proper medical treatment by Defendant Shepherd and others following a stroke he suffered on March 6, 2012, because they refused to honor the orders of an outside specialist to send Plaintiff back to that doctor for follow-up care, stopped his medication, and refused to give him rehabilitative physical therapy (Doc. 1, p. 21).   Further, Plaintiff was

---

[3] This statute prohibits an inmate from bringing a civil action without full prepayment of the filing fee, if he has had three or more prior lawsuits dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, unless he is "under imminent danger of serious physical injury."  Because Plaintiff includes the allegations of imminent danger, he apparently believes that he has "struck out" and cannot bring the instant action in forma pauperis (IFP) without such a showing.  However, this Court can document only two "strikes" against Plaintiff to date, among his more than a dozen previous cases:  *Williams v. Ctrs. for Disease Control*, Case No. 00-cv-5927 (N.D. Ill., dismissed Feb. 11, 2002, for failure to state a claim), and *Williams v. Ctrs. for Disease Control*, Appeal No. 02-3683 (7th Cir., Feb. 20, 2004) (appeal from No. 00-cv-5927 deemed frivolous).  Plaintiff's motion to proceed IFP in this case has been granted (Doc. 8).

attacked by a fellow inmate on August 5, 2012, while a guard (Sgt. Evilizer, who is not among the named Defendants) looked on and failed to intervene (Doc. 1, p. 22).  Finally, he complains that guard Kevin Murray (also not included as a Defendant) stole his special-ordered shoes that he needs to help him walk after the stroke (Doc. 1, p. 21).  Plaintiff seeks injunctive relief in order to obtain post-stroke medical care, and prays for damages for the other constitutional violations.

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint.  Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated a colorable federal cause of action against Defendants Withoft, Heiman, Lockhead, Hood, Durham, and Westerman for excessive force (Count 1), deliberate indifference to medical needs (Count 2), and conspiracy to falsify a disciplinary report against Plaintiff following their attack on him (Count 3).  In addition, the claim against Defendants Withoft, Heiman, and Lockhead for retaliation (Count 4) shall receive further consideration.

Plaintiff fails to state a claim, however, against Defendants Cowans, Rednour, and Miller, for their failure to respond to his grievances (Count 5).  He argues that their refusal to answer numerous grievances "enhanced" the conspiracy by the guards who attacked him, to cover up the incident by falsifying their report.  First, there is no constitutional violation where prison officials fail to follow the administrative grievance procedure, because the Constitution requires no procedure at all.  *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995) ("a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause"); *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).  Thus, even if these Defendants' handling of his grievances amounted to a conspiracy (a proposition which the Court finds highly dubious), their failure to

respond to the grievances or to rule in Plaintiff's favor does not implicate any constitutional right. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where plaintiff had access to the grievance procedure but he did not obtain the outcome he desired). Accordingly, Count 5 shall be dismissed with prejudice.

Likewise, Plaintiff fails to state a claim against Defendants Faheem or Pollion for deliberate indifference to his medical needs following the guards' attack on him (Count 6). The only mention of Defendant Pollion in the complaint is that s/he told Plaintiff he had to see Dr. Faheem. Nowhere does Plaintiff indicate that Defendant Faheem was responsible for any delay in providing medical attention to him after the guards' assault; instead it was Defendant Durham and the other guards who refused or failed to get Plaintiff to a doctor. Plaintiff was then in Stateville for the next week. Plaintiff was given x-rays of his injured back and shoulder in April and May 2011, and in June 2011 Defendant Faheem prescribed pain medication for him. Plaintiff claims that Defendant Faheem refused to send him to an outside neurologist, but also indicates that Defendant Faheem may have sought permission to do just that, when he told Plaintiff that he needed to get approval from Wexford for such a referral (Doc. 1, p. 20). Either way, Defendant Faheem provided treatment to Plaintiff, and nothing in the complaint indicates that he disregarded a known risk of harm to Plaintiff from a serious medical condition. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (to state a claim for deliberate indifference, a prisoner must show that he had an objectively serious medical need, and that the defendant knew of and disregarded an excessive risk to his health). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d

262, 267 (7th Cir. 1997).  Count 6 for deliberate indifference against Defendants Faheem and Pollion shall be dismissed.

Plaintiff does, however, state a claim for deliberate indifference to his need for follow-up care for the stroke he suffered in March 2012 (Count 7).  Defendant Shepherd (the Menard medical director), refused to follow the outside specialist's order to return Plaintiff to him for care following Plaintiff's discharge from the hospital (Doc. 1, p. 21).  Defendant Shepherd also stopped Plaintiff's pain and nerve medication, and refused to provide him with physical therapy.  Plaintiff also blames Dr. Dennis Larson, Louis Shicker (the IDOC medical director) and Wexford Health Sources, Inc., for these omissions, although he failed to include them in the list of Defendants at the beginning of the complaint.  While this claim merits further review, it cannot proceed in the current action.

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George,* 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)).  This claim for deliberate indifference to the May 2012 stroke, against Defendant Shepherd and the other medical providers, is unrelated to the claims in Counts 1, 2, 3, and 4, that arose from the guards' attack on Plaintiff in March 2011. Therefore, Count 7 shall be severed into a new action as described below.

Similarly, Plaintiff's claims that Sgt. Evilizer failed to protect him from an ongoing attack by a fellow inmate in August 2012 (Count 8), and that Guard Kevin Murray stole his shoes (Count 9), are unrelated to any of the other claims discussed above (Doc. 1, p. 21-22). Plaintiff does not indicate that any of the other named Defendants were involved in the August

2012 incident (Count 8). While the inmate attacked Plaintiff, Sgt. Evlizer looked on and laughed, then later hit Plaintiff on his injured shoulder after the attack (Doc. 1, p. 22). While a guard is not required to place himself in danger to stop an inmate-on-inmate attack, *see Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007), at this stage, Plaintiff's failure to protect and excessive force claims merit further review. Pursuant to *George v. Smith*, these claims must also be severed into a separate action.

However, Count 9, regarding the theft of Plaintiff's shoes, does not state a constitutional claim. The only constitutional right that might be implicated here is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Count 9, therefore, shall be dismissed without prejudice to Plaintiff bringing this claim in state court.

Finally, Defendants Anderson and Malley shall be dismissed from this action without prejudice, because Plaintiff fails to make any allegations against them in the body of his complaint. He therefore has not placed them on notice of any claims he may have against them, which is necessary in order for them to answer the complaint. *See* FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Collins v. Kibort*, 143 F.3d 331, 334 (7th

Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

## Pending Motion for Emergency Temporary Restraining Order ("TRO") (Doc. 11)

On September 26, 2012, Plaintiff filed his motion for emergency TRO, seeking a Court order that Defendants be required to provide him with follow-up medical care for his stroke, as described in Count 7.[4]  The motion indicates that unless he receives proper follow-up stroke care, he may suffer permanent physical impairment.  Without opinion as to the ultimate merits of the motion, the Court's preliminary review dictates that Plaintiff's request for injunctive relief deserves consideration as soon as practicable.  Because Count 7 must be severed into a separate action, the Court is required to allow Plaintiff to voluntarily dismiss the severed claims before imposing upon him an additional filing fee.  *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007); *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004); FED. R. CIV. P. 20. Accordingly, unless Plaintiff advises the Court, within the deadline below, that he does not wish to pursue Count 7 in the severed case, his motion for TRO shall be given prompt consideration by the magistrate judge in that severed action.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c), Plaintiff's motion for TRO (Doc. 11) shall be filed in the newly severed case on Count 7, and shall then be referred to a United States Magistrate Judge for an evidentiary hearing and issuance of a report and recommendation.  Personal service on the Defendants shall be ordered.  The Magistrate Judge shall set an evidentiary hearing as soon as practicable, in light of the time necessary to effect service of summons and for receipt of the Defendants' responses to the motion for TRO.  Any motions filed after the date of this Order that relate to the request for TRO or seek leave to

---

[4]  Although the motion was received on September 26 via electronic mail, portions of the document were illegible.  Thus, the motion could not be docketed until October 3, 2012, when the original paper copy was received.  This Court's status order at Doc. 10 was entered before the motion was docketed.

amend the complaint shall also be referred to the Magistrate Judge.

**Disposition**

        The Clerk is **DIRECTED** to correct Plaintiff's name to **CLAXTON   H. WILLIAMS, JR.**, and to add **DEFENDANT J. SHEPHERD** as a party to this action.

        **IT IS HEREBY ORDERED** that **COUNTS 5** and **6** are **DISMISSED** with prejudice.   **COUNT 9** is **DISMISSED** without prejudice.   **DEFENDANTS COWANS, REDNOUR, MILLER, FAHEEM,** and **POLLION** are **DISMISSED** with prejudice. **DEFENDANTS ANDERSON** and **MALLEY** are **DISMISSED** without prejudice.

        Plaintiff's deliberate indifference claim against **DEFENDANT SHEPHERD** (**COUNT 7**), and the failure to protect/excessive force claims against **SGT. EVILIZER** (**COUNT 8**), which are unrelated to the claims arising from the March 22, 2011, guard assault, are **SEVERED** into two new cases.  Those new cases shall be:

        (**CASE 1**) Claims in Count 7 above, against **J. SHEPHERD, DR. DENNIS LARSON, LOUIS SHICKER,** and **WEXFORD HEALTH SOURCES, INC.,** for deliberate indifference to medical needs following Plaintiff's March 2012 stroke, and

        (**CASE 2**) Claims in Count 8 above, against **SGT. EVILIZER** for failure to protect and excessive force on August 5, 2012.

        **PLAINTIFF IS ADVISED** that if, for any reason, he does not wish to proceed with either of the newly-opened cases, he must notify the Court in writing within 14 days (on or before October 19, 2012).  Unless Plaintiff notifies the Court that he does not wish to pursue one or both newly opened actions, he **will be responsible for an additional filing fee** in each new case that remains open.  Service shall not be ordered on the Defendants in the newly opened

cases until after the deadline for Plaintiff's response.

These new cases **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings.  In each new case, the Clerk is **DIRECTED** to file the following documents:

      (1)     This Memorandum and Order

      (2)     The Original Complaint (Doc. 1)

      (3)     Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

The Clerk is **DIRECTED** to **TRANSFER** the TRO motion at Doc. 11 into the newly opened **CASE 1** (claims in Count 7) for further consideration, and to terminate the TRO motion in this case.

      **IT IS FURTHER ORDERED** that the ***only claims remaining in this action are COUNTS 1, 2, 3, and 4.*** This case shall now be captioned as: **CLAXTON H. WILLIAMS, JR., Plaintiff, vs. SGT. JERRY WITHOFT, SGT. HEIMAN, ANTHONY LOCKHEAD, GUARD HOOD, MAJOR DURHAM, and MAJOR WESTERMAN,  Defendants.**

      **IT IS FURTHER ORDERED** that Defendant **SHEPHERD** is **TERMINATED** from ***this*** action with prejudice.

The Clerk of Court shall prepare for Defendants **WITHOFT, HEIMAN, LOCKHEAD, HOOD, DURHAM,** and **WESTERMAN**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service

on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs,

notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 5, 2012**

*/s/ Michael J. Reagan*
United States District Judge